IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIA NIEVES, ) <br> ) <br>       Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br>       Defendant. ) <br> ) | No. 16 C 4588 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Maria Nieves's ("Plaintiff") claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 17] is granted and the Commissioner's cross-motion for summary judgment [Doc. No. 27] is denied.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. Her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq., and she returned to her position of record, that of Deputy Commissioner for Operations, in November 2017. In accordance with the agency's Order of Succession, Berryhill continues to lead the SSA as it awaits the nomination and confirmation of a Commissioner. https://www.ssa.gov/agency/commissioner.html (last visited Apr. 5, 2018).

## BACKGROUND

I. **Procedural History**

Plaintiff filed an application for DIB on August 27, 2012, alleging a disability onset date of June 1, 2009, due to lower back pain, lower abdominal pain, depression, chest pain, headaches and migraines, leg pain, uterine fibroids, and insomnia. (R. 144–46, 194, 317.) Her application was denied initially and again upon reconsideration on April 11, 2013. (R. 129–178.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on October 15, 2014. (R. 50–128.) Plaintiff appeared at the hearing represented by an attorney and offered testimony. (*Id.*) A vocational expert and psychological expert also appeared and offered testimony. (*Id.*) On October 30, 2014, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (R. 16–42.) The Appeals Council ("AC") denied review on January 14, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 4–10.)

II. **ALJ Decision**

On October 30, 2015, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 16–42.) At step one, the ALJ determined that

Plaintiff had not engaged in substantial gainful activity since June 1, 2009, her alleged onset date. (R. 21.) At step two, the ALJ found that Plaintiff suffered from severe impairments of degenerative disc disease, degenerative joint disease, major depressive disorder, and post-traumatic stress disorder or anxiety. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), (R. 22.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a light exertional level, subject to several limitations.[2] At step four, the ALJ concluded that Plaintiff is unable to perform her past relevant work. (R. 33.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as stock checker, bakery worker, and laundry sorter. (R. 34–35.) Because of this determination, the ALJ found that Plaintiff is not disabled under the Act. (R. 35.)

---

[2] At this stage, the ALJ determined Plaintiff could perform light work:
> [E]xcept that [Plaintiff] is able to frequently engage in postural and manipulation activities. [Plaintiff] is able to perform simple unskilled two- to three-step work, meaning work that can be learning under 30 days. [Plaintiff] may have only incidental contact with the public, e.g., if she is stocking shelves she can provide directions. [Plaintiff] is able to occasionally work around other employees, but no joint tasks, with occasional supervision. [Plaintiff] must work in a routine predictable environment with end of day goals.

(R. 24.)

## DISCUSSION

### III. ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then

shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

IV. **Judicial Review**

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th

Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

V. **Analysis**

Plaintiff generally alleges that the ALJ's decision should be remanded because her decision was unsupported by substantial evidence. The Court addresses Plaintiff's individual arguments below.

**A. Cherry-picking**

Plaintiff highlights several areas in the ALJ's decision where she claims that the ALJ "cherry-picked" evidence from the record which supported her unfavorable disability determination. While ALJs are prohibited from cherry-picking, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant . . . evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."), they are not required to discuss every piece of evidence in the record in favor of their determinations. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("[g]enerally speaking, an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence") (internal quotation marks and citation omitted).

First, Plaintiff alleges that the ALJ "cherry-picked" evidence from the testimony of medical expert Dr. Demetri Dres, Psy.D. (the "ME.") In particular, Plaintiff complains that the ALJ failed to discuss the impact that Dr. Dres' statements would have on her ultimate RFC. (Pl.'s Br. at 8–9.) At the hearing, Dr. Dres originally testified that Plaintiff had a "compromised tolerance for demand and adaptation to stressful situations" and "a lack of emotional fortitude to persevere with fulltime work." (R. 110–11.) The ME first made these statements when the ALJ asked him to consider the opinion of Dr. Christine Kieffer, M.D., while making his determination. Later, the ME opined that based off Plaintiff's treatment records alone, and not the opinion of Dr. Kieffer, Plaintiff would have different RFC. Specifically, Dr. Dres stated she would retain the ability to, among

7

other things, perform unskilled work with two- to three- step tasks, have incidental contact with the public, and work in a predictable environment.

Ultimately the ALJ accorded little weight to Dr. Kieffer's opinion, therefore only accepted the portions of the ME's testimony which did not rely on her report. This was undoubtedly permissible, as it was the ALJ's job to carefully examine and weigh the evidence of record before reaching her conclusions. *Rogalska v. Berryhill*, No. 15 C 5430, 2017 WL 1178515, at *7 (N.D. Ill. Mar. 30, 2017) (stating the ALJ "had the right to review the evidence and, following the rules and regulations of the [Social Security Administration], accord it an appropriate weight.") (citing *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). It may be Plaintiff's contention that the ALJ should have accorded more weight to Dr. Kieffer's opinion, and in turn the findings of the ME which relied on that opinion, but that position does not warrant remand. Nor does it amount to impermissible cherry-picking. Accordingly, the Court finds that the ALJ did not err in her consideration of the ME's testimony.

In a related argument, Plaintiff claims the ALJ ignored progress notes which demonstrated that she "was prescribed medication for panic attacks and that she was consistently reporting feeling depressed, hopeless, had sleep disturbance, [and] decreased energy. (Pl.'s Br. at 9) (citing R. 651, 655.) To the contrary, the ALJ did not ignore these findings and found that Plaintiff has severe impairments of major depressive disorder and post-traumatic stress disorder/anxiety. The ALJ then accounted for these impairments by imposing a number of limitations on Plaintiff's ability to function, including work in a routine environment. (R. 24.)

It is possible that Plaintiff takes issue with the fact that the ALJ did not address the specific evidence she cites in her brief. First, the Court notes that the ALJ referred to Exhibit 16F, where this report was located, several times throughout her decision, and often in connection with her mental evaluations. (R. 28.) Furthermore, even if the ALJ did not cite this exact medical record, no error occurred because the ALJ's decision "need not contain a complete written evaluation of every piece of evidence." *McKinzey*, 641 F.3d at 891.[3]

**B. "Playing Doctor"**

Next, Plaintiff complains that the ALJ failed to account for her physical limitations, particularly her limited ability to use her hands, when formulating her RFC. In support of this finding, Plaintiff points to the findings of Dr. Amer Rustom, M.D., an independent medical examiner, who found that she would be limited to using her hands: an 80% limitation with the left and a 20% limitation with the right.[4] (R. 633–35.)

In her RFC determination, the ALJ limited Plaintiff to "frequent" manipulation with her hands. Plaintiff, citing to the Social Security Administration's Program Operational Manual, explains that the definition of frequently "is the ability to engage in a given maneuver for one-third to two-thirds

---

[3] In her brief Plaintiff states "[t]he ALJ raised a question at the hearing as to why Plaintiff was not treating with a psychiatrist and the medical records themselves show that [Plaintiff] did not have access to psychiatric care given long times at Stroger Hospital." (Pl.'s Br. at 9.) It is unclear if this is merely support for Plaintiff's general allegations about her mental RFC, or a separate argument. Because this statement is not supported by any argument or case law, the Court deems it waived. *See infra*.

[4] Plaintiff mistakenly asserts in her brief that Dr. Rustom found she would be limited to using her hands 50–60% of the time. (Pl.'s Br. at 5.)

9

of an eight out workday. (Pl.'s Br. at 9–10.) Accordingly to Plaintiff, this means that the ALJ's RFC limited her to using her hands roughly five hours in an eight hour workday. Plaintiff claims the ALJ improperly equated Dr. Rustom's findings into a functional limitation without the help of medical expert.

Plaintiff's argument presupposes that the ALJ relied on Dr. Rustom's findings, which she did not. In her decision, the ALJ accorded Dr. Rustom's opinion little weight because it was not supported by the objective evidence or Plaintiff's course of treatment. (R. 31.) Therefore, the ALJ was not required to incorporate Dr. Rustom's findings at all into her RFC determination. Instead, the ALJ relied on the other evidence of record, including Plaintiff's other examiners. Accordingly, her finding that Plaintiff would be limited to "frequent" manipulation is supported by substantial evidence.

**C. Social Functioning**

Third, Plaintiff contends that the ALJ inadequately accounted for her ability to handle work-related stress. In particular Plaintiff alleges the ALJ improperly dismissed the finding of Dr. Christine Kieffer, Ph.D., who found she suffered from mild agoraphobia.[5] (Pl.'s Br. at 10–11.) (R. 534–36.)

Contrary to Plaintiff's assertions otherwise, the ALJ fully discussed the findings of Dr. Kieffer, including her agoraphobia, but ultimately concluded that her findings were entitled to "limited weight" because they were primarily based on

---

[5] Agoraphobia is the "intense, irrational fear of open spaces, characterized by marked fear of venturing out alone or of being in public places where escape would be difficult or help might be unavailable." *Dorland's Medical Dictionary*, http://www.dorlands.com (last visited April 5, 2018).

10

Plaintiff's subjective complaints, as well as a lack of supportive objective evidence. (R. 29–30.) For example, the ALJ pointed out that Plaintiff did not report symptoms consistent with Dr. Kieffer's findings to the mental health professionals at Salud Family Health Center at a later date in time. (*Id.*) Again, the ALJ engaged in a proper analysis of the evidence, and Plaintiff's desire that she weighed the evidence differently is not enough to warrant remand.[6]

### D. Subsequent Application

Finally, Plaintiff offers a brief statement, explaining to the Court that she refiled her disability application shortly after the Commissioner's decision became final in this case, which was approved. However, Plaintiff makes no argument in connection with this statement nor does she explain the effect of the approval on the matter currently pending before the Court.

The Seventh Circuit has held that "undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992); *Handford ex rel. I.H. v. Colvin*, No. 12 C 9173, 2014 U.S. Dist. LEXIS 3449, at *39 (N.D. Ill. 2014) (applying *Berkowitz* to reject underdeveloped arguments in a Social Security appeal). Moreover, "[i]t is the parties' responsibility to allege facts and indicate their relevance under the correct legal standard." *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515

---

[6] Plaintiff claims that the ALJ failed to discuss her ability to handle stress; however, in her discussion the ALJ assigns Plaintiff a *greater* restriction in social functioning than the State Agency consultants who found she would only have a mild limitation in social functioning. (R. 31.) Plaintiff fails to articulate how she was harmed by this determination. Moreover, Dr. Dres opined she would have a moderate limitation in social functioning due to tendency to be isolated, difficulty with others, as well as her agoraphobia. (R. 30.) This is consistent with the ALJ's determination.

11

F.3d 718, 721 (7th Cir. 2008) (citation omitted) (internal quotation marks omitted). Because Plaintiff offered no more than a skeletal statement that her claim was subsequently approved, her claim is waived. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [Doc. No. 17] is denied Commissioner's cross-motion [Doc. No. 27] is granted. Affirmed.

**SO ORDERED.**  **ENTERED:**

**DATE:    April 20, 2018**    _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**